## McDOUGALL v. OLIVER IRON MINING CO.*

(Circuit Court of Appeals, Eighth Circuit. October 18, 1922.)

No. 6061.

**Patents ☞328—822,753, for an ore cleaner, not infringed.**
     The McDougall patent, No. 822,753, for an ore cleaner, *held* not infringed by the ore concentrator of the Greenway patent, No. 895,363.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit in equity by Alexander McDougall against the Oliver Iron Mining Company. Decree for defendant, and complainant appeals. Affirmed.

Horace G. Stone and Merritt Starr, both of Chicago, Ill. (John W. Lusk, of St. Paul, Minn., John W. Munday, of Chicago, Ill., S. George Stevens, of Duluth, Minn., George L. Cragg, of Chicago, Ill., Joseph H. Chandler, of Los Angeles, Cal., William W. Gurley, Nathaniel C. Sears, and Hopkins, Starr & Hopkins, all of Chicago, Ill., on the brief), for appellant.

Henry M. Huxley, of Chicago, Ill., and Frederick P. Fish, of Boston, Mass. (D. Anthony Usina, of New York City, Frank D. Adams, of Duluth, Minn., Charles L. Byron, of Chicago, Ill., and Davis, Severance & Morgan, of St. Paul, Minn., on the brief), for appellee.

Before CARLAND, Circuit Judge, and TRIEBER and MUNGER, District Judges.

CARLAND, Circuit Judge. Suit in equity by appellant against appellee for infringement of claim 3 of letters patent No. 822,753, issued to appellant June 5, 1906, for ore cleaner. The defenses pleaded by appellee were invalidity of appellant's patent and noninfringement. The trial court decided the patent to be valid, but not infringed by appellee's structure. In appellant's brief filed in this court it is stated:

"The case is simplified by the admission of defendant that 'we don't claim any patent of any prior use in anticipation of the McDougall patent.'" Record 280.

In appellant's reply brief the same thing is stated, except the word "or" is substituted for "of." The word "or" is undoubtedly correct, as the brief of appellee, quoting the same language, places the word "or" in parentheses after "of." In regard to this alleged admission, the brief of appellee states:

"It is freely conceded that there is no single patent or prior use which shows exactly the specific combination set forth in claim 3 of the McDougall patent. In other words, there is no single anticipation of the claim. * * * While admitting that there is no single anticipation of McDougall's specific combination as set forth in claim 3, on the other hand, it is urged most strongly that this combination does not involve patentable invention over the prior art, and has contributed absolutely nothing to the development of the art."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 260 U. S. ——, 43 Sup. Ct. 249, 67 L. Ed. ——.

Counsel for appellee, therefore, as shown by the record and brief, abandoned the defense of invalidity of appellant's patent by reason of anticipation, and by statement in open court when this case was being argued orally declared that appellee would rest its case upon the defense of noninfringement alone. In view of the foregoing, the defense of noninfringement alone will be considered. Our judgment of affirmance could well be rested on the opinion of the learned trial court in this case; but, as the validity of the patent was also discussed in that opinion, we proceed to give the reasons for our affirmance of the decree below. As heretofore indicated, the charge of infringement is based upon claim 3 of appellant's patent which reads as follows:

"An apparatus of the character described, comprising an inclined trough having openings in the bottom and extending transversely thereof, a water and ore supply for the upper end of the trough and of a size to maintain several inches of water in the trough, water supply pipes resting upon the bottom of the trough a distance above the openings and below the maintained water level, means for regulating the supply to said transverse pipes, independent of each other, and said pipes having openings discharging the water in an upward and downward direction, whereby the lighter materials are raised in the maintained water level and carried downward over the openings by the same."

Appellee's alleged infringing structures were constructed in accordance with the Greenway patent, No. 895,363, for an apparatus for the concentration of ores, minerals, etc., issued August 4, 1908. Claim 8 of the Greenway patent fairly illustrates its other claims and reads as follows:

"An ore concentrator having a trough with a perforated bottom and at least one shaft located therein, and having a series of paddles mounted thereon for moving ore slowly and with a minimum amount of agitation in the direction of the higher end of the trough, in combination with a series of independent water chambers underneath the perforated bottom of said trough, suitably connected with a water main and a water supply adapted to form a multitude of sorting columns throughout said trough, with the effect of separating any material in said trough along the lines of different specific gravities, sand, gangue, and other materials being carried off in suspension in the water over the lower end or tailboard of the trough, and the heavier materials being forced in the opposite direction to the discharging end, and there delivered in dewatered form, together with separate water supply means for each of said water chambers, with means for regulating the supply to each chamber independently."

Appellant's apparatus, as shown by the patent specifications, comprises in combination an inclined trough, having ore discharge openings in the bottom, cross-current bottom pipes on the trough bottom, perforated for upward and downward jets, and located at a distance from the ore discharge openings sufficient to put the discharge openings out of reach of the jets; the forced jets discharging in an upward and downward direction, and the water and ore supply of the sandy fine ore, coming down the trough in a stream through which the cross-current bottom pipes arranged crosswise of the trough discharge the forced upward jets through the oncoming stream of sandy ore and water, lifting the lighter sand and dirt into an upper stream which is carried over the ore discharge openings, while the heavier pieces and

particles of ore roll along the trough and out through the one or more exit holes as cleaned ore.

Appellee's alleged infringing structures, as described in the specifications of the Greenway patent, comprise an inclined tank approximately 25 feet long, within which are two adjacent coacting parallel shafts extending longitudinally of the tank and rotating in opposite directions. These shafts are usually known as "logs," on account of the fact that in the early types of washers of this character wooden logs were actually employed, and the same term is now employed, even when the shafts are made of steel. For the same reason the washers of this type are known as "log washers." These logs or shafts carry disintegrating and propelling paddles inclined with relation to the axis of rotation. The mixture of crude ore and water is introduced near the lower end of the log washer, and the action of the paddles serves to agitate and break up the ore (for permitting the water to carry away the sand thus loosened), and also to propel the heavier material up the inclined tank to the discharge end. During the movement of the heavier material or concentrate upwardly towards the upper end of the inclined tank by the action of the paddles, this concentrate is gradually raised above the main body of the water in the tank (chiefly in the space between the two logs), and is subjected to the action of cleansing or rinsing water, and is finally discharged in a clean and dewatered condition through the discharge opening. In the meantime, the water bearing the slimes or lighter material flows away through lateral discharge openings near the lower end of the tank, located some distance above the bottom of the same. There are no ore or sand or slime discharge openings of any nature whatsoever in the bottom or floor of the tank.

Both of the patents involved in this controversy are devices for separating the sandy Lake Superior ores from the body of sand, clay, and dirt with which they are naturally commingled. Appellant's device is shown by the record to be a combination of old elements, and could not be infringed, unless every element of the device or its equivalent was used in the same relation by appellee, and as against appellant every element claimed must be regarded as material. The authorities in support of these principles are too numerous to cite. Among the material elements of claim 3 of appellant's patent are:

"Trough having openings in the bottom and extending transversely thereof." "A water and ore supply for the upper end of the trough." "Pipes resting upon the bottom of the trough a distance above the openings." "Said pipes having openings discharging the water in an upward and downward direction, whereby the lighter materials are raised * * * and carried downward over the openings by the same."

None of the above material elements are found in exactly the same form in appellee's structure; especially is this true in regard to the element of a trough having openings in the bottom and extending transversely thereof. Even appellant's witness Whittier testified that there were no openings in the bottom of appellee's structure extending transversely thereof. If we apply the rule of law that every element of appellant's claim must be used by appellee in order to constitute in-

fringement, then the absence of the element mentioned from appellee's structure would defeat the appellant. After a careful examination of the record, however, in relation to the prior art and the proceedings of the Patent Office, we are convinced that the learned trial judge was right in denying to the appellant the rights of a pioneer in regard to mechanical equivalents, and we concur in the following excerpt taken from his opinion.

"Applying these principles to the case at bar, it is clear that the perforated bottom of the trough of defendant's structure is not the mechanical equivalent of the transverse pipes on the bottom of plaintiff's trough; that the exit for cleaned ore at the top end of defendant's trough is not the mechanical equivalent for the transverse openings along the bottom of plaintiff's trough; that the paddles and the shaft carrying the ore upward in defendant's structure are not the mechanical equivalent of the stream of water carrying the ore downward in plaintiff's structure, nor of the transverse pipes helping to lift the ore up in plaintiffs structure."

It results, therefore, that the material elements which we have above described, or their mechanical equivalents, are not found in appellee's structure. The decree below, therefore, must be affirmed; and it is so ordered.